IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARLA ROXANNE OLSON,

           Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

No. 3:12-cv-00819-HZ

OPINION & ORDER

Linda S. Ziskin
ZISKIN LAW OFFICE
P.O. Box 753833
Las Vegas, NV 89136

Richard A. Sly
ATTORNEY AT LAW
209 SW Oak Street, Suite 102
Portland, OR 97204

    Attorneys for Plaintiff

Adrian L. Brown
U.S. ATTORNEY'S OFFICE, DISTRICT OF OREGON
1000 S.W. Third Ave., Suite 600

1 - OPINION & ORDER

Portland, OR 97204

Richard Rodriguez
OFFICE OF GENERAL COUNSEL
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNANDEZ, District Judge:

    Carla Roxanne Olson brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner determined Plaintiff was not disabled and denied her application for disability insurance benefits ("DIB") and Supplemental Security Income benefits ("SSIB") under Titles II and XVI of the Act, respectively. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## PROCEDURAL BACKGROUND

    Plaintiff was born on February 13, 1967. Tr. 143. At the time of her alleged disability onset date, February 9, 2009, Plaintiff was 41 years old. Tr. 20, 30. Plaintiff has a B.A. in psychology and mass communications, and has prior work as an administrative assistant, a group supervisor, and a customer service representative. Tr. 30, 43. On October 9, 2009, Plaintiff protectively filed for DIB and SSIB. Tr. 20. Plaintiff's claims were initially denied on March 26, 2010, and upon reconsideration on July 29, 2010. Id. A hearing was held on July 12, 2011, in Portland, Oregon, before Administrative Law Judge ("ALJ") Richard A. Say. Tr. 20, 32. On August 24, 2011, the ALJ found Plaintiff was not disabled. Tr. 32. Plaintiff requested a review of the ALJ's decision, but the Appeals Council issued an order denying Plaintiff's request for review on March 19, 2012, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

2 - OPINION & ORDER

## FACTUAL BACKGROUND

The parties are familiar with the medical evidence and other evidence in the record. Therefore, the evidence will not be repeated except as necessary to explain my decision.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141. In step four, the Commissioner determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If so, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to

the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one of the sequential proceedings, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 9, 2009. Tr. 22, Finding 2. At step two, the ALJ found Plaintiff had the "following severe impairments: Lumbar radiculitis, adjustment disorder, depression, anxiety disorder, nausea, vomiting, and headaches . . . " Id., Finding 3. At step three, the ALJ found Plaintiff's impairments did not meet or equal the requirements of a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 23, Finding 4.

At step four, the ALJ assessed Plaintiff as having the following RFC:

[C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She should not climb ladders, ropes or scaffolds or crawl. She can occasionally climb ramps and stairs, stoop, kneel, and crouch. She can frequently balance. She should avoid even moderate exposure to hazards, fumes, odors, dusts, and gases. She is limited to unskilled and routine tasks.

Tr. 24-25, Finding 5.

At step five, the ALJ found Plaintiff was not disabled because she was "capable of performing past relevant work as a customer service representative" and could perform the requirements of an office helper, a storage rental clerk, and a cashier. Tr. 31, Finding 6.

## STANDARD OF REVIEW

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879

4 - OPINION & ORDER

F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted). The initial burden of proof rests upon the claimant to establish disability. Howard, 782 F.2d at 1486. To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

## DISCUSSION

Plaintiff contends (1) the ALJ erred when failing to discuss re-opening or consolidating Plaintiff's previous disability claims; (2) the ALJ erred at Step Two of the sequential analysis when he failed to address her agoraphobia, obsessive compulsive disorder ("OCD"), and panic disorder; (3) the ALJ improperly rejected the lay witness evidence; and (4) the ALJ failed to consider her drowsiness as one of the side effects of her prescribed medications. Based on these alleged errors, Plaintiff requests that the ALJ's decision be reversed and this case be remanded for additional proceedings.[1] For the reasons discussed below, I conclude that the ALJ did not commit reversible error.

/ / /

---

[1] In her opening brief, Plaintiff initially requested that this Court remand this case for the immediate award of benefits. In her reply brief, however, Plaintiff asks only that this case be remanded for additional proceedings. See Opening Br., pp. 8, 12; Reply, p. 4.

5 - OPINION & ORDER

**I. Reopen and Consolidation**

In the Procedural Background section of her opening brief, Plaintiff states that despite the fact that she "filed an application for SSDI benefits in December, 2005 [sic], alleging onset of disability . . . beginning March 11, 2005" and "filed additional applications for SSDI and SSI benefits in June, 2007 [sic], as well as in October or November, 2009 [sic]", the ALJ did not discuss any issues regarding re-opening or consolidating her claims. Opening Br., p. 2. In a single-sentence footnote, Plaintiff requests that I issue an order requiring the ALJ to address the issue of reopening or consolidating her previous claims should this action be remanded for additional proceedings. Id. at n.1.

Under certain circumstances, an ALJ may reopen a prior case for benefits. 20 C.F.R. § 404.987(b) provides that the Commissioner "may reopen a final determination or decision on [its] own initiative, or [the claimant] may ask that a final determination or a decision to which [she was] a party be reopened". 20 C.F.R. § 404.988(a)-(b) provides that a decision may be reopened within 12 months of the date of the notice of the initial determination for any reason or within 4 years of the date of the notice of the initial determination if there is good cause. The Ninth Circuit, however, has held that refusal by the Secretary to reopen a previous decision is not a final decision within the meaning of §405(g) which a court has jurisdiction to review. Taylor v. Heckler, 765 F.2d 872, 877 (9th Cir. 1985) (internal citations and quotation marks omitted).

Plaintiff fails to argue or otherwise establish that I have jurisdiction to review the ALJ's decision not to reopen or consolidate Plaintiff's claims. Additionally, as discussed below, the ALJ did not commit reversible error and accordingly, Plaintiff's request to reopen or consolidate her previous claims is moot.

/ / /

6 - OPINION & ORDER

**II. Step Two**

Plaintiff contends the ALJ erred at Step Two of the sequential analysis by not following the "special technique" required under 20 C.F.R. § 404.1520a, which according to Plaintiff, required the ALJ to make express findings about her agoraphobia, OCD, and panic disorder. Plaintiff further contends that even if her agoraphobia, OCD, and panic disorder were not severe, the ALJ was still required to consider them when determining her RFC.

Plaintiff's arguments are unavailing. At Step Two of the sequential analysis, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. 137, 140-41 (1987). The social security implementing regulations discuss the Step Two severity determination in terms of what is "not severe." See 20 C.F.R. § 404.1521(a). According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." Id. Basic work activities include "abilities and aptitudes necessary to do most jobs, including . . . walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;" "[u]nderstanding, carrying out, and remembering simple instructions;" and "[r]esponding appropriately to supervision, co-workers and usual work situations[.]" 20 C.F.R. § 404.1521(b). The Step Two inquiry is a de minimis screening device to dispose of groundless claims. Yuckert, 482 U.S. at 153-54. An impairment or combination of impairments can be found "not severe" if the evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work . . . ." See Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3. "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms . . . ." 20 C.F.R. § 404.1508. The claimant bears the burden at Step Two of proving the existence of

severe impairments that prevent her from engaging in substantial gainful activity for at least twelve continuous months. 42 U.S.C. § 423(d)(1)(A); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 2001) (citation omitted).

In Keyser v. Commissioner of Social Security Administration, 648 F.3d 721, 725 (9th Cir. 2011), the Ninth Circuit stated:

> In step two of the disability determination, an ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. In making this determination, an ALJ is bound by 20 C.F.R. § 404.1520a. That regulation requires those reviewing an application for disability to follow a special psychiatric review technique. . . . Specifically, the reviewer must determine whether an applicant has a medically determinable mental impairment, . . . rate the degree of functional limitation for four functional areas, . . . determine severity of the mental impairment (in part based on the degree of functional limitation), . . . and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder.

Here, the ALJ determined at Step Two that Plaintiff's lumbar radiculitis, adjustment disorder, depression, anxiety disorder, nausea, vomiting, and headaches were severe impairments. Tr. 22. The ALJ did not expressly refer to Plaintiff's diagnoses of agoraphobia, OCD, or panic disorder, stating that although such "symptoms and complaints appear[ed] in the medical treatment records periodically," there was no evidence showing "that they [were] more than transient or cause[d] significant vocational limitations" and were not severe "because no objective, acceptable medical documentation support[ed] such a finding." Tr. 23.

Based on the record before me, I conclude that the ALJ did not err when concluding that Plaintiff's agoraphobia, OCD, and panic disorder were not severe. The portions of the record on which Plaintiff relies do not specifically show any limitations arising out of her agoraphobia, OCD, or panic disorder. For example, although Plaintiff points me to the September 29, 2008, and April 30, 2009, medical notes of her treating psychologist, Jon Strand, Psy.D., those medical

8 - OPINION & ORDER

notes do not reveal any limitations specifically arising out her agoraphobia. Strand's September 29, 2008, medical note, simply shows that he diagnosed Plaintiff with "[a]goraphobia w/o history of panic disorder". Tr. 433. Missing from Strand's September 29, 2008, medical note is any assessment about limitations associated with Plaintiff's agoraphobia. Id. Plaintiff also points me to Strand's April 30, 2009, medical note. That note does not show any limitations arising out of her agoraphobia, but simply assesses Plaintiff with "[a]agoraphobic [a]voidance" and provides treatment goals and objectives. Tr. 437.

With respect to Dorothy Anderson, Ph.D., a doctor at the Disability Determination Services ("DDS") who reviewed Plaintiff's files, the portion of the record on which Plaintiff relies simply shows Anderson provided a psychiatric review of Plaintiff and diagnosed her with OCD. Tr. 402, 407. Absent from Anderson's psychiatric review are any specific limitations arising out of OCD. Tr. 407. Notably, Anderson even concluded that Plaintiff's OCD was not severe.[2] Tr. 402.

With regard to Plaintiff's alleged panic disorder, none of the evidence on which Plaintiff relies shows any limitations arising out her alleged impairment, let alone that her alleged panic disorder qualifies as a severe impairment. Plaintiff cites a medication list she prepared for her disability application, wherein she stated that she takes valiaum-diazapam for her "anxiety, panic, and agoraphobia". Tr. 246. Plaintiff also cites an Adult Health Status Summary and Adult Information Form wherein she reported that she has, among other things, panic attacks. Tr. 476, 859. Plaintiff's self-reports are insufficient to establish that her alleged panic disorder is severe. Finally, Plaintiff cites a Mental Summary performed by Joshua J. Boyd, Psy.D.,

---

[2] In her reply, Plaintiff cites for the first time a December 13, 2005, medical note by Mark L. Shatsky, D.O., which according to Plaintiff shows she has OCD. Tr. 320. Shatsky, however, did not expressly diagnosis Plaintiff with OCD and did not explicitly state any limitations arising out of Plaintiff's OCD. Tr. 320-21.

9 - OPINION & ORDER

diagnosing her with "PTSD, Anxiety D/O and Depression". Tr. 836. Notably absent from Boyd's medical notes is any diagnosis of panic disorder or any limitations arising out of her alleged panic disorder.

The evidence on which Plaintiff relies is insufficient to establish that her agoraphobia, OCD, and panic disorder are severe impairments. The evidence cited by Plaintiff does not specifically set forth limitations arising out of her agoraphobia, OCD, or panic disorder and does not establish that her alleged impairments amount to more than slight abnormalities or have more than minimal effects on her ability to work. The ALJ's conclusion that there was no evidence showing that Plaintiff's agoraphobia, OCD, or panic disorder caused significant vocational limitations is supported by substantial evidence. Tr. 23. Based on the above, the ALJ did not err at Step Two when finding that Plaintiff's agoraphobia, OCD, and panic disorder were not severe.

### III. Lay Witness Statements

Plaintiff contends the ALJ improperly rejected the lay witness statements of (1) her sister, Crystal Winkelmann[3]; (2) her husband, Michael Olson; and (3) her friend, Maureen Davis. Plaintiff's arguments are unavailing.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citations omitted). "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (citation omitted).

/ / /

---

[3] Plaintiff erroneously refers to Crystal Winkelmann as Crystal Winkleman. The ALJ also mistakenly refers to Crystal Winkelmann as Crystal Winkleman. For the purposes of this Opinion & Order, I refer to Crystal Winkelmann as "Winkelmann."

**A. Winkelmann**

Plaintiff asserts the ALJ improperly rejected Winkelmann's statements because she opined Plaintiff was unemployable. Plaintiff argues that this was improper because Winkelmann meant to say that Plaintiff was unemployed at the time, not that she was unemployable. Plaintiff's argument fails.

The record shows Winkelmann stated in a third-party function report that Plaintiff is able to do "some laundry", do "general cleaning", and go to the "grocery store daily". Tr. 252-54. Winkelmann also stated that Plaintiff "spends time with others" by "work[ing] with [Job's Daughters' International, a non-profit organization for girls between the ages of 10 and 20[,]" where she "helps chaperone younger adults". Tr. 254, 303. She, however, also stated that Plaintiff has a "fear of going out and falling or forgetting what she's doing and looking dumb" and "would never get [along with authority figures]". Tr. 256. In a letter dated July 5, 2011, Winkelmann also stated that Plaintiff showed signs of "[h]oarding, low self esteem [sic], and a lot of sleeping", that the "vomiting and diarrhea caused by [Plaintiff's] symptoms have made it very hard to return to the work force", and that Plaintiff's "disabilities . . . have kept her unemployable." Tr. 308.

The ALJ expressly referred to Winkelmann's third-party function report and her July 5, 2011, letter. He, however, found Winkelmann's statements not credible because the "activities of daily living described by Ms. Winkelman [sic] [were] inconsistent with allegations of total disability", no "medical providers determined that [Plaintiff was] as limited as Ms. Winkelman [sic] suggest[ed]", and "the determination of whether an individual is 'disabled' under the Social Security Act belongs to the Commissioner." Tr. 29 (citing 20 C.F.R. 404.1527 and 416.927).

11 - OPINION & ORDER

The ALJ provided germane reasons supported by substantial evidence in the record. Plaintiff's activities are inconsistent with the activities described by Winkelmann. For example, although Winkelmann observed Plaintiff as being completely disabled and was fearful of going out, the record shows Plaintiff chaperoned younger adults and goes grocery shopping on a daily basis. In addition, as the ALJ correctly stated, he was not required to adopt Winkelmann's opinion that Plaintiff was completely disabled because that conclusion is reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d)(1)-(2). Finally, Plaintiff's assertion that Winkelmann meant to say unemployed instead of unemployable is insufficient to render the ALJ's reasoning improper. The record clearly shows Winkelmann opined that Plaintiff was unemployable because of her disabilities. Although Plaintiff now contends her sister meant to say that she was not employed at that time–not that Plaintiff was unemployable, the ALJ properly relied on what Winkelmann actually said, which was that Plaintiff was unemployable. Tr. 308. The ALJ provided germane reasons when rejecting Winkelmann's lay witness statements.

### B. Michael Olson and Mareen Davis

Plaintiff contends the ALJ erred when rejecting Mr. Olson's and Davis's lay witness statements. Specifically, Plaintiff contends the ALJ erred when rejecting Mr. Olson's statements because "the medical evidence [did] not support the alleged degree of limitation [she provided]." Tr. 28. Plaintiff also asserts that the ALJ improperly rejected Davis's lay witness statements because Davis did not treat or examine Plaintiff in a medical setting. Tr. 30. Plaintiff maintains that the ALJ's errors warrant reversal of the ALJ's ultimate disability determination.

The ALJ's reasons for rejecting Mr. Olson's and Davis's statements do not amount to specific or germane reasons. An ALJ may not reject lay witness statements simply because they

12 - OPINION & ORDER

were "not supported by medical evidence in the record." Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) (citation omitted). In addition, an ALJ may not reject lay witness statements simply because the lay witness did not treat or examine the claimant. See id. (a lay person, "though not a vocational or medical expert, [is] not disqualified from rendering an opinion as to how [a claimant's] condition affects his ability to perform basic work activities") (citation omitted).

When viewing the record as a whole, however, I conclude that the ALJ's errors do not warrant remand because the ALJ's errors were harmless. Failure to credit lay witness testimony does not automatically warrant reversal of an ALJ's decision. See Molina v. Astrue, 674 F.3d 1104, 1121-22 (9th Cir. 2012). Even when a court erroneously addresses lay witness statements, the court must still consider whether the ALJ's errors were harmless. See id. at 1115 (citations omitted); see also Archer v. Comm'r of Soc. Sec., No. 6:12-cv-00767-SI, 2013 WL 3353775, at *13 (D. Or. 2013) (concluding an ALJ does not commit reversible by improperly rejecting lay witness testimony if such error is harmless) (citing Molina, 674 F.3d at 1122). An ALJ's failure to discuss testimony may be harmless if it is "inconsequential to the ultimate nondisability determination in the context of the record as a whole." Molina, 674 F.3d at 1122 (citations and internal quotation marks omitted).

The record does not establish that the lay witness testimonies in this instance were consequential to the ALJ's ultimate disability determination. The majority of Mr. Olson's and Davis's statements concerning Plaintiff's mental impairments amount to disability determinations reserved for the ALJ and do not set forth specific functional limitations. For example, Mr. Olson opined that he could not "imagine any kind of job [Plaintiff] could possibly perform" because Plaintiff is "pretty much sick and in extreme pains every day," lacks energy,

13 - OPINION & ORDER

has "extreme fatigue", and has "major diarrhea and vomiting problems." Tr. 310. With respect to Davis, Plaintiff relies on Davis's opinion that she did not believe Plaintiff could work because Davis has to call Plaintiff to remind her of appointments and noticed Plaintiff has difficulty with the transposition of numbers.

The functional limitations described in Mr. Olson's and Davis's lay testimonies also describe the same limitations set forth in Plaintiff's own statements. See Tr. 26-30, 303-04, 310. A review of the record shows the ALJ properly found that Plaintiff's statements were not credible, and Plaintiff does not specifically challenge the ALJ's adverse credibility finding. Tr. 26-30. Because the same evidence that the ALJ referred to in discrediting Plaintiff's statements also discredit Mr. Olson's and Davis's statements, Plaintiff's error in addressing Mr. Olson's and Davis's lay statements were harmless. See Molina, 674 F.3d at 1122 ("[a]n ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims") (citations and internal quotation marks omitted).

In sum, the ALJ did not commit reversible error when rejecting Winkelmann's, Mr. Olson's, and Davis's lay witness statements.

## IV. The ALJ's RFC Determination

Plaintiff contends the ALJ's RFC determination is erroneous because even if the ALJ properly concluded that her agoraphobia, OCD, and panic disorder were not severe at Step Two, he was still required to consider the limitations associated with those impairments when determining her RFC. Plaintiff also argues that the ALJ's RFC is erroneous because he did not consider her testimony that medications make her drowsy. Plaintiff's arguments lack merit.

/ / /

**A. Limitations Associated with Plaintiff's Agoraphobia, OCD, and Panic Disorder**

A finding that an impairment is severe at Step Two "only raises a prima facie case of a disability." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) (citation omitted). "Where the ALJ fails to list a medically determinable impairment at Step Two, but nonetheless considers the limitations posed by the impairment in the RFC, any error at Step Two is harmless." Kipps v. Comm'r Soc. Sec. Admin., 2012 WL 6649589, No. 6:12-cv-00043-MA, at *2 (D. Or. 2012) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)). In determining the RFC, an ALJ must consider limitations imposed by all of a claimant's impairments–even those that are not severe, and must evaluate "all of the relevant medical and other evidence[.]" SSR 96-8p, 1996 WL 374184, at *2; see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883(9th Cir. 2006) ("In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.") (Citations and internal quotation marks omitted).

Plaintiff does not challenge the weight the ALJ accorded to her medical providers or the ALJ's finding that her statements were not credible. Moreover, as discussed above, Plaintiff does not articulate or cite any evidence showing limitations specifically arising out of her agoraphobia, OCD, or panic disorder. Because there were no limitations for the ALJ to include in Plaintiff's RFC insofar as her agoraphobia, OCD, and panic disorder were concerned, the ALJ's silence as to limitations arising out of those diagnoses was proper. See Ealum v. Comm'r Soc. Sec. Admin., No. 6:11-cv-06413-MA, 2013 WL 141130, at *6 (D. Or. 2013) (holding that any error by the ALJ at Step Two was harmless where there was "nothing in the record attributing any functional limitations [and] . . . nothing to incorporate into the RFC").

### B. Plaintiff's Drowsiness

Plaintiff asserts that the ALJ's RFC determination is erroneous because he did not consider her testimony that medications make her drowsy. Plaintiff contends that the ALJ was required to specifically consider the side effects caused by her medications when assessing her credibility pursuant to SSR 96-7p. Defendant responds that Plaintiff's RFC adequately accommodates Plaintiff's alleged drowsiness because it restricts Plaintiff from climbing and restricts Plaintiff from moderate exposure to hazards.

I am not persuaded by either of the parties' arguments. Defendant cites no authority, and I find none, establishing that restrictions from climbing and moderate exposure to hazards properly address the side effects of Plaintiff's medications.

On the other hand, I am not persuaded by Plaintiff's argument. SSR 96-7p addresses the credibility of a claimant's statements. It provides, in relevant part, that "that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: . . . [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms . . . ." SSR 96-7, 1996 WL 374186, at *3. A careful review of the record shows that the ALJ specifically recognized Plaintiff's statement that her medications make her drowsy. Tr. 25. The ALJ, however, ultimately concluded that Plaintiff's statements were not credible and provided clear and convincing reasons supporting his conclusion. Tr. 26-29. For example, the ALJ found Plaintiff not credible because her statements were inconsistent with her daily activities, she only received conservative treatment, she failed to comply with her doctors' recommendations, and multiple providers questioned Plaintiff's use of narcotic pain medications. Tr. 26-28. The ALJ also found Plaintiff not credible because doctors noted that she was not in any acute distress and that

16 - OPINION & ORDER

her symptoms were improving. Id. In addition, the ALJ found Plaintiff not credible because the record showed that she told an emergency room doctor that she had been untruthful about her pain levels and had only gone to the emergency room that day so she "could cry and act like a baby" out of sight from her children. Tr. 27, 954. The ALJ's reasons for finding Plaintiff not credible are clear and convincing and supported by substantial evidence in the record. Accordingly, the ALJ did not err when excluding from her RFC statements that her medications make her drowsy.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

Dated this 17 day of Sept, 2013.

MARCO A. HERNANDEZ
United States District Judge

17 - OPINION & ORDER